IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

SHARON J. MILBURN                                                                    PLAINTIFF

V.                             NO.:  CIV. 1:06CV107 TCM

JO ANNE B. BARNHART, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATOR                                          DEFENDANT
OF THE UNITED STATES OF AMERICA

## PLAINTIFF'S BRIEF

### I.  BACKGROUND

On July 13, 2004, the Claimant filed applications for a period of disability, disability insurance benefits and supplemental security income  alleging that shebecame disabled on October 23, 2000.  After her applications were denied initially and on reconsideration, the Claimant filed a request for hearing and a hearing decision was entered on March 28, 2006, finding the Claimant was not disabled.

After denial of the Claimant's application at the hearing level, the case was appealed to the Appeals Council.  On July 6, 2006, the Appeals Council denied Plaintiff's request for review.  The Claimant then appealed her case to the United States District Court for the Eastern District of Arkansas.  No decision has been made on Claimant's case.  Therefore, the decision of the Administrative Law Judge stands as the final decision of the Commissioner.

### II.  ISSUES PRESENTED

1. **THE SECRETARY'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

2. **WHETHER THE ADMINISTRATIVE LAW JUDGE ERRED IN DISCREDITING THE PLAINTIFF'S ALLEGATIONS AND FINDING PLAINTIFF CAPABLE OF PERFORMING LIGHT WORK.**

## III. STANDARD FOR JUDICIAL REVIEW

Section 205(g) of the Act, 42 U.S.C. §405(g), provides for judicial review of a "final decision" of the Commissioner under Title II.  Section 1631(c)(3), provides for judicial review to the same extent as the Commissioner's final determination under §205.  The standard for judicial review by the Federal District Court is whether the decision of the Commissioner was supported by substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996).  The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of, and opposition to the Commissioner's decision.  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456 464-65, 95 L.Ed. 456 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989).  "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Gavin v. Heckler, 811 F.2d 1195, 1199, (8th Cir. 1987) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99, 101, S.Ct. 999, 1006-07, 67 L.Ed.2d 69 (1981)).  See also Thompson v. Sullivan, 928 F.2d at 277.

## IV. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving (s)he is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for continuous period of not less

than twelve months. 42 U.S.C. §423(d)(1)(A). If the Plaintiff establishes that (s)he is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the Plaintiff can perform. Griffin v. Bowen, 856 F.2d 1150, 1153-54 (8th Cir. 1988); McMillian v. Schweiker, 697 F.2d 215, 220-21 (8th Cir. 1983).

### 1. THE SECRETARY'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The Social Security Act defines "disability" as "the inability to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months..." 42 U.S.C. §423(d)(1)(A)(1988). Additionally, an individual will be determined to be disabled "only if his impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful activity which exists in the national economy..." 42 U.S.C. §423(d)(2)(A)(1988).

After an individual establishes an impairment or a combination of impairments severe enough to preclude performing his or her former work the Secretary has the burden of demonstrating the existence of other forms of substantial, gainful activity in the national economy that the individual can perform. Meneses v. Secretary of HEW, 442 F.2d 802, 806 (D.C. Cir. 1971); Bryant v. Heckler, 629 F.Supp. 1496, 1501(n)(11)(D.C. 1986).

Under this sequential evaluation process, an individual seeking disability benefits must show at Step 1 that he or she is not performing substantial gainful activity; at Step 2,

that he or she has a severe impairment; at Step 3, that he or she has an impairment or combination of impairments that meets or equals the listing in the regulations; at Step 4, that he or she cannot return to work done in the past. It is at this step that the Administrative Law Judge stopped his analysis in this case. If the individual cannot do past work, then the process goes to Step 5 where the Secretary must show that there is another kind of work in the national economy the Plaintiff can do if disability is to be denied. An individual can proceed to Step 4 even if he or she cannot meet the Step 3 medical criteria. If he or she does not meet these criteria, benefits can be awarded without having to proceed any further.

Plaintiff disability stems from a history of:

1. Asthma; (T-165)

2. Adult ADD: (T-165)

3. Obstructive sleep apnea; (T-165)

4. Chest pains; (T-167)

5. Left ejection fraction 51.4%; (T-168, 178)

6. Trace of pulmonary insufficiency; (T-168)

7. Reversal of the E to A ratio of the mitral valve probably due to diastolic dysfunction; (T-168)

8. Anterior ischemia; (T-169)

9. CP Dyspiria; (T-170)

10. HBP; (T-170)

11. Insomnia; (T-180)

12. Hypokalemia; (T-180)

13. Fatigue/malaise; (T-181)

14. Low back pain; (T-181)

15. Inattention and lack of concentration; (T-212)

16. Special ed classes; (T-214, 215)

17. COPD; (T-223)

18. Emphysema; (T-235)

19. Obesity; (T-235)

20. Scoliosis; (T-247)

21. Granuloma, right lower lung; (T-248)

The Administrative Law Judge found that Plaintiff did not meet the Listings, stating:

> After considering all of the claimant's impairments individually and in combination, the combined clinical findings from her impairments do not medically meet or medically equal the criteria for any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

(T-16)

> The Medical-Vocational Guidelines are used as a framework for the decision when the claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has any nonexertional limitations. Based upon the claimant's residual functional capacity, she is capable of performing a significant range of light work as defined in 20 CFR §§ 404.1567 and 416.967.

(T-19)

The Administrative Law Judge assessed Plaintiff's pulmonary insufficiency, stating:

> May 4, 2004 radiological examinations showed a probably old granuloma in her right lower lung field, mild lumbar scoliosis, postoperative pelvic changes and no significant bulging or herniated disc. (Exhibit F, pp. 12-14) A November 22, 2004 comprehensive polytomograms showed mild obstructive sleep

apnea. (Exhibit F, p. 58)  A CPAP titration test on January 13, 2005 was inconclusive.  (Exhibit F, p. 69)  A July 15, 2005 myocardial perfusion test may have showed anterior ischemia, but the findings were inconclusive.  (Exhibit F, p. 90)  A July 15, 2005 echocardiogram showed a trace of pulmonary insufficiency.  (Exhibit F, p. 91)

There are two pulmonary function tests.  The June 13, 2003 test has FVC results of 2.02 to 2.05 and FEV1 results of 1.69 to 1.72.  (Exhibit F, p.61)  Her FVC was sixty percent of expected.  The interpretation was moderate restriction.  The September 24, 2004 test has FVC results of 2.19 to 2.66 and FEV1 results of 1.77 to 1.94. (Exhibit F, p. 35)  Her FEV1 was sixty-eight percent of expected.  The interpretation was mild obstruction and low vital capacity possibly due to restriction. (T-15)

The Administrative Law Judge did not consider the resulting limitations of physical activities associated with Claimant's COPD and emphysema, such as fatigue, palpitation, dyspnea, weakness, dizziness and insomnia.

Claimant suffers from multiple limitations as a result of her lung disease, along with the side effects of her medications which render her totally disabled.  Her breathing treatments are necessary four times a day.  Plaintiff testified:

Q     All right.  What's your main health problem now, the breathing?

A     My lungs, emphysema and asthma.

Q     What other problems?

A     My back.

Q     What other problems are you having?

A     Just that.

Q     Okay.  Are you going to a doctor for these problems?

A     Yeah, I was going, but now I don't have no insurance to go now.

Q Who were you going to?

A Dr. Davis on Poplar Bluff [phonetic].

Q How is he -- what were you treating with him for, for the breathing problems?

A Yeah, emphysema and asthma.

Q What was he giving you for those?

A I was on two to three different kinds of inhalers. And **I'm taking treatments, breathing treatments four times a day.**

Q Are you doing that now?

A Yeah. I've got my breathing machine with me. And then I'm on a CPAP machine for at night.

Q Now is that to sleep?

A Yeah.

(T-265, 266)

In this case the Plaintiff's limitations imposed by her impairments and related symptoms of chest pains, fatigue, weakness, dizziness and the side effects of her medication can be viewed as exertional limitations, since they affect her strength demands such as sitting, standing, lifting, carrying, pushing, pulling and walking. Therefore, the rule contained in Appendix Two will determine whether the Plaintiff is disabled. 20 C.F.R. §416.969A(b) (1992).

The Administrative Law Judge erred in discrediting Plaintiff's non-exertional limitations, such as:

  1. Shortness of breath;

  2. Fatigue;

    3.     Dizziness;

    4.     Sleep apnea;

    5.     Insomnia;

    6.     Chest pain; and

    7.     Side effects of medication.

The Administrative Law Judge further stated:

> The record reflects limitations on what the claimant is able to do, but there are no opinions that she is unable to work. She saw a pulmonary specialist, reported a number of findings, was sent for additional testing and never went back to the pulmonary specialist. The record does not indicate why she did not return to Dr. Daniels. She saw a psychologist twice and was started on medications, but has not sought psychotherapy of any follow up psychological or psychiatric assistance. It is difficult to give much credence to her reports of disabling symptoms when she does not follow up with the pulmonary specialist or the psychologist.
>
> \* \* \* \*
>
> The claimant reports that she has trouble breathing and is tired all day because she has trouble sleeping. The pulmonary function tests show no more than moderate obstruction. She has been referred to specialists regarding her sleep apnea. She has not followed up with these referrals.
>
> The claimant reports significant limitations because of her breathing problems. The objective test results are not consistent with the degree of impairment that she reports. She has sleep apnea, but reports that the CPAP device helps and she does not follow up with treatment. She reports back pain, but the objective findings and the level of treatment she seeks are not consistent with the degree of impairment she claims.

(T-17)

Those statements are unfair. The Plaintiff did follow through with her appointments and tests. Plaintiff is on a CPAP machine now as a result of her test. She told the Administrative Law Judge she lost her medicaid. Plaintiff testified:

> Q    Okay, Now you say you have a CPAP machine.
>
> A    Yes, ma'am.
>
> Q    **Did you have to buy that yourself?**
>
> A    **When they, you know, the end -- Medicaid quit paying for it.**
>
> Q    Um-hum.
>
> A    I had to purchase it.
>
> Q    **Okay. But you did purchase it because you needed it?**
>
> A    **Yes, ma'am.**
>
> Q    Okay. How often do you have to use it?
>
> A    Every night.
>
> Q    Every night.
>
> A    Yes.
>
> Q    What happens if you don't use it?
>
> A    They said it'd be my changes of having a stroke or a heart attack at night.

(T-276)

**The Administrative Law Judge made this statement without any mention of where in the record he felt she was not following treatment.** The records from Dr. Daniels shows repeated follow-up visits and refills for her medications. Plaintiff testified she had to buy her CPAP machine herself. She also testified she does her breathing

treatments four times a day. It is unclear why the Administrative Law Judge made this statement.

Plaintiff suffers from the following symptoms:

1. Chest pain;

2. Dyspnea;

3. Shortness of breath;

4. Fatigue;

5. Weakness;

6. Insomnia and

7. Dizziness.

These symptoms are a result of the following impairments from which Plaintiff suffers:

**Hypokalemia** abnormally low potassium concentration in the blood; it may result from potassium loss by renal secretion or by the gastrointestinal route, as by vomiting or diarrhea. It may be manifested clinically by neuromuscular disorders ranging from weakness to paralysis, by electrocardiographic abnormalities (depression of the T wave and elevation of the U wave, by renal disease, and by gastrointestinal disorders.

**Atelectasis** incomplete expansion of the lungs.

**Dyspnea** difficult or labored breathing. **Cardiac d.,** distressful breathing caused by heart disease. **Exertional d.,** dyspnea provoked by physical effort or exertion. **Expiratory d.**, difficulty in breathing caused by hindrance to he free egress of air from the lungs. **Inspiratory d.,** difficulty in breathing caused by hindrance to the free ingress of air into the lungs. **Paroxysmal nocturnal d.,** a form of respiratory distress related to posture (especially reclining at night) and usually attributed to congestive heart failure with pulmonary edema. **Renal d.,** difficulty in breathing attributable to kidney disease.

Dorland's Illustrated Medical Dictionary, pp. 160, 486, 745 and 750.

The Administrative Law Judge did not give fair consideration to the evidence which shows how the Plaintiff's activities are affected by her symptoms.

An Administrative Law Judge generally cannot find that a Claimant's testimony regarding subjective complaints are not credible without first making specific findings as to the relevant evidence considered in deciding to disbelieve the Claimant,[1] particularly where the Claimant's testimony is critical to the outcome of the case,[2] or the Claimant has been diagnosed with an impairment which can account for the symptoms.[3] Although an Administrative Law Judge's decision need not discuss and evaluate every piece of evidence relating to the Claimant's subjective complaints of pain, an Administrative Law Judge's apparent rejection of a Claimant's testimony is improper where the Administrative Law Judge fails to analyze an entire line of evidence relating to the pain and the underlying impairment alleged to cause the pain.

The Administrative Law Judge did not properly apply the factors listed in Polaski. The Administrative Law Judge's credibility assessment was not based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988).

In evaluating the Plaintiff's subjective complaints, the Administrative Law Judge has a statutory duty to assess the credibility of Plaintiff and other witnesses. Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992). The Administrative Law Judge may discredit subjective

---

[1] Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24; Suranie v. Sullivan, (1992, DC RI) 787 F.Supp 287, 37 Soc. Sec. Rep. Serv. 80, CCH Unemployment Ins. Rep. ¶16809A.

[2] Johns v. Bowen, (1987, CA11) 821 F.2d 551.

[3] Easter v. Bowen, (1989, CA8) 867 F.2d 1128, CCH Unemployment Ins. Rep. ¶14509A.

complaints inconsistent with the record as a whole. Ownby v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993). The law on this issue is clear. Under Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984) (subsequent history omitted), "an Administrative Law Judge must look at five factors when determining the credibility of a claimant's subjective allegations of pain: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." Harris v. Shalala, 45 F.3d 1190, 193 (8th Cir. 1992).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d at 1322. The ALJ "may not disregard the claimant's subjective complaints solely because the objective medical evidence does not fully support them." Harris v. Shalala, 45 F.3d at 1193 (citing Polaski v. Heckler, 739 F.2d at 1321-22).

To determine whether the ALJ properly applied the factors listed in Polaski, it must be determined that the ALJ took into account all relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could discount the testimony for lack of credibility. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). Further, the ALJ must acknowledge and consider the Polaski factors before discounting subjective complaints. Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). The ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988).

The Administrative Law Judge concluded that Plaintiff's chronic obstructive pulmonary disease, dyspnea, shortness of breath, asthma are only mild impairments. The ALJ totally ignored the fact that more than one doctor suggested that Plaintiff would benefit from continued bronchodilator therapy. As noted from the records, Plaintiff reported to her doctor and to the ER physicians that she was suffering from shortness of breath on several occasions.

In order to meet the listings Plaintiff must show:

**IMPAIRMENTS OF THE RESPIRATORY SYSTEM**

The Listing of Impairments (listings) contains the criteria for evaluation of chronic disorders of the respiratory system of an adult. The respiratory system is a continuous channel in the head, neck and chest (thorax) that is comprised of the upper respiratory system (nose, paranasal sinuses, ear and throat or pharynx) and the lower respiratory system (tracheobronchial system-trachea and bronchi-and lungs). Impairments caused by chronic disorders of the respiratory system generally produce irreversible loss of pulmonary function due to ventilatory impairments, gas exchange abnormalities, or a combination of both. The most common symptoms attributable to respiratory disorders are dyspnea on exertion, cough, wheezing, sputum production, hemoptysis, and chest pain. Because these symptoms are common to many other diseases, a thorough medical history, physical examination, and chest x-ray or other appropriate imaging technique is required to establish chronic pulmonary disease. Moreover, pulmonary function testing is required to assess the severity of the respiratory impairment once a disease process is established by appropriate clinical and laboratory findings.

**42:214 Chronic pulmonary insufficiency**

A claimant who suffers from chronic obstructive pulmonary disease due to any cause, with a forced expiratory volume equal to or less than the value specified in the Listing of Impairments (listings) for a person of the claimant's height is considered disabled. Similarly, a claimant with a chronic restrictive ventilatory disorder is disabled if the claimant shows a forced vital capacity equal to or less than the appropriate value specified for a person the claimant's height. And, a claimant with a chronic impairment of gas exchange due to clinically documented pulmonary disease is disabled if the claimant shows a single breath diffusing capacity of the lungs for carbon monoxide at a value less than that specified in the Listings or arterial blood gas values, measured while at rest (breathing room air, awake, and sitting or standing-in a clinically stable condition on at least two occasions, three or more weeks apart within a six-month period), equal to or less than the values specified in the Listings or arterial blood gas values, measured during steady state exercise while breathing room air, that are equal to or less than the values specified in the Listings.

**§42:224 Pulmonary function testing**

The values of the spirometric testing that are considered presumptively disabling are contained in Tables I and II of the Listing of Impairments; in which the values vary according to the height of the individual, measured without shoes. Table I is used to evaluate chronic obstructive pulmonary disease and requires a measurement of a claimant's forced expiratory volume, the maximum amount of air that can be breathed out in one second. Table II provides values for measuring forced vital capacity for chronic restrictive ventilatory disease. The results of the spirometric testing should be expressed in liters, body temperature and pressure saturated with water vapor (BTPS).

The claimant's file must include the appropriately labeled spirometric tracing, the manufacturer and model number of the device used, and a statement of the claimant's ability to understand the directions and cooperate in performing the tests. In addition, the spirogram must be recorded at a speed of at least 20 mm. per second, and the recording device must provide a volume excursion of at least 10 mm per liter. Moreover, if reproductions of the original spirometric tracings are submitted, they must be legible and have a time scale of at least 20 mm per second and volume scale of at lest 10 mm per liter to permit independent measurements.

The report forced expiratory volume and forced vital capacity should represent the largest of at least three satisfactory forced expiratory maneuvers. Two of the satisfactory spirograms should be reproducible for both pre-bronchodilator tests and, if indicated, post-bronchodilator tests. A value is considered reproducible if it does not differ from the largest value by more than 5 percent or 0.1 liters, whichever is greater. The highest value of the forced expiratory volume and forced vital capacity, whether from the same or different tracings, should be used to assess the severity of the respiratory impairment.

Spirometry should be repeated after administration of an aerosolized bronchodilator under supervision of the testing personnel if the prebronchodilator forced expiratory volume value is less than 70 percent of the predicted normal value. If a bronchodilator is not administered, the reason should be clearly stated in the claimant's report. Pulmonary function studies performed to assess airflow obstruction without testing after bronchodilators cannot be used to assess levels of impairments in the range that prevents any gainful work activity, unless the use of bronchodilators is contraindicated. Generally, pulmonary function studies should not be performed unless the clinical status is stable

(e.g., the individual is not having an asthmatic attack or suffering from an acute respiratory infection or other chronic illness). However, wheezing is common in asthma, chronic bronchitis, or chronic obstructive pulmonary disease and does not preclude testing.

The Administrative Law Judge stated he had applied the five factor test of Polaski claiming the issue to be determined as to whether the severity of Plaintiff's pain with resultant functional limitations constitute disability within the meaning of the Social Security Act, but acknowledging that the Plaintiff may have some pain or other discomfort.

The Court also recognizes that "an ALJ is not required to discuss every piece of evidence submitted," but an ALJ is "required to develop the record fully and fairly." Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). When an ALJ relies on older medical records, and either does not discuss later records or discusses only those parts of later records that support a specific view of the claimant's condition, the ALJ has not "fully and fairly" considered the evidence and developed the record, and the failure to consider significant contradictory evidence "balance out" against sustaining the ALJ's conclusions. See Wilcutts, 143 F.3d at 1136-37.

**The ALJ cannot isolate each of Plaintiff's diseases. They must be considered as a whole. The Administrative Law Judge should further evaluate Plaintiff's obesity and its affect on Plaintiff's SOB.**

The ALJ's Decision is not supported by substantial evidence on the record as a whole under the appropriate scrutinizing analysis. This claim should be remanded for reconsideration of the evidence of Plaintiff's significant limitations and the impact they have on her claim and her residual functional capacity.

The Administrative Law Judge filed to properly evaluate Plaintiff's obstructive sleep apnea. The Listings show:

Sleep related breathing disorder:

H. Sleep-related breathing disorders.
Sleep-related breathing disorders (sleep apneas) are caused by periodic cessation of respiration associated with hypoxemia and frequent arousals from sleep. Although many individuals with one of these disorders will respond to prescribed treatment, in some, the disturbed sleep pattern and associated chronic nocturnal hypoxemia cause daytime sleepiness with chronic pulmonary hypertension and/or disturbances in cognitive function. Because daytime sleepiness can affect memory, orientation, and personality, a longitudinal treatment record may be needed to evaluate mental functioning. Not all individuals with sleep apnea develop a functional impairment that affects work activity. When any gainful work is precluded, the physiologic basis for the impairment may be chronic cor pulmonale. Chronic hypoxemia due to episodic apnea may cause pulmonary hypertension (see 3.00G and 3.09). Daytime somnolence may be associated with disturbance in cognitive vigilance.

Obesity:

I. Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the respiratory system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listed-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

**In Plaintiff's case these illnesses must be considered as a whole, not isolating them; but, rather, their combined effect on Plaintiff's RFC.**

Plaintiff also suffers from Adult ADHD. The record shows:

> As part of the clinical interview and mental status exam and ADD (Attention Deficit Disorder) checklist for adults was administered. She responded yes to 44% of the items. A score of 40% or greater is suggestive of an attentional

17

> problem. A TOVA (Test of Variables of Attention) was then scheduled.
>
> A TOVA test was administered on 10/13/2004. Dr. Barbour administered the test. An ADHD score was not obtained due to invalid quarters. Quarters 1, 3, and 4 were invalid due to anticipatory errors. Excessive anticipatory errors however are often associated with an antentional problem.
>
> Considering, the results of the ADD checklist and the patient's performance on the TOVA a trial of medication used in the treatment of ADHD is recommended.

(T-202)

Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings. In addition, major limitations in this area can often be assessed through clinical examination or psychological testing. Wherever possible, however, a mental status examination or psychological test data should be supplemented by other available evidence.

In work evaluations, concentration, persistence, or pace is assessed by testing your ability to sustain work using appropriate production standards, in either real or simulated work tasks (e.g., filing index cards, locating telephone numbers, or disassembling and reassembling objects). Strengths and weaknesses in areas of concentration and attention can be discussed in terms of your ability to work at a consistent pace for acceptable periods of time and until a task is completed, and your ability to repeat sequences of action to achieve a goal or an objective.

In this case the Administrative Law Judge's determination as to Plaintiff's ability to perform a full range of light work was not supported by substantial evidence of record. This case should be remanded to properly assess this claim, including all of Plaintiff's limitations and disabilities when considering Plaintiff's RFC.

## VIII. **CONCLUSION**

The foregoing demonstrates Plaintiff has suffered disabling impairments since July 13, 2004. The Administrative Law Judge in this case failed to base his findings upon substantial evidence outlining findings which were contrary to the evidence which has been pointed out here and above. Moreover, the administrative record clearly shows that Plaintiff suffers from numerous impairments, which in combination with his age, educational background, and past work experience, have rendered her disabled within the meaning of the Social Security Act. Accordingly, this Court should reverse the Secretary's decision and remand this case to the Secretary to award Plaintiff benefits from the onset date of his disability.

Respectfully submitted,

_____
DAVID THROESCH
210 E. Everett
Pocahontas, Arkansas  72455
(870) 892-8866

By_____
   **DAVID THROESCH (#76130)**
   Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, **DAVID THROESCH,** do hereby certify that a copy of the above and foregoing pleading has been served on:

Assistant U.S. Attorney, 111 South 10th Street, Suite 20.333, St. Louis, Missouri 63102, via Electronic Case Filing on this  20th  day of December, 2006.

_____
**DAVID THROESCH**